

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

———————————

No. 2:11-cr-00132-NR

———————————

UNITED STATES,

v.

RUSSELL FREED,

Defendant.

———————————

## MEMORANDUM OPINION

———————————

### J. Nicholas Ranjan, United States District Judge

In March 2012, Russell Freed pled guilty to seven counts of child-pornography charges. Currently serving a 20-year prison sentence for these crimes, Mr. Freed now moves the Court for immediate compassionate release from prison due to the threat of the COVID-19 pandemic. Mr. Freed also requests that the Court appoint him counsel to pursue this request for early release.

This Court has discussed the standard for granting such motions for early release in *United States v. Somerville*, — F. Supp. 3d —, 2020 WL 2781585 (W.D. Pa. May 29, 2020) (Ranjan, J.). Under that standard, a medically compromised prisoner's showing of non-speculative risk of exposure to COVID-19 can justify compassionate release, unless the section 3553(a)

sentencing factors weigh significantly against that outcome.

Here, however, Mr. Freed has not made a strong enough showing to justify the significant sentence reduction he seeks. In particular, the Court finds that Mr. Freed has not sufficiently shown that he faces an actual, non-speculative, and non-generalized risk of exposure to COVID-19 in prison. The Court thus finds that Mr. Freed fails to show an "extraordinary and compelling" reason that justifies his early release. Further, the Court concludes that the section 3553(a) factors do not justify Mr. Freed's release, given the severity and circumstances of his offenses and the nature of his original sentence.

For these reasons, Mr. Freed's motion is denied.

## **BACKGROUND**

Mr. Freed is serving a sentence of 20-years imprisonment after pleading guilty to the production and attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); the distribution and receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2); and the possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The term of imprisonment will be followed by supervised release for the remainder of Mr. Freed's life.

Having completed less than half of his prison sentence, Mr. Freed now moves under 18 U.S.C. § 3582(c)(1)(A)(i) for a reduction of his prison sentence to time-served based on his underlying medical conditions and the risk of exposure to COVID-19 at FCI Fort Dix. The government opposes Mr. Freed's release.

Because the Court writes for the benefit of the parties, who are presumably familiar with the pertinent background facts, the Court will dispense with any comprehensive summary of those facts and only reference those facts necessary to its decision as they become relevant to the analysis below.

## DISCUSSION & ANALYSIS

**I.    The appointment of counsel for Mr. Freed to pursue his motion for release is not warranted.**

As an initial matter, Mr. Freed moves for the Court to appoint him counsel for purposes of his motion for release. The Court declines to do so.

"Appointment of counsel is not mandatory."[1] *United States v. Evans*, No. 13-173, 2020 WL 3574367, at *1 (W.D. Pa. June 30, 2020) (Conti, J.). It is instead up to the Court's discretion whether to appoint counsel. *See Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993). In deciding whether to appoint counsel, a district court must first determine whether the *pro se* party's claim has merit. *See Evans*, 2020 WL 3574367, at *1 (citing *Tabron*, 6 F.3d at 155). If it does, the Court must then consider a variety of factors, to the extent they apply, including "(1) the merits of the claim; (2) the movant's ability to present his case considering his education, literacy, experience, and the restraints placed upon him by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and his ability to pursue such investigation; (5) his capacity to retain counsel on his own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony." *Id.* (citing *Tabron*, 6 F.3d at 157).

Turning first to the threshold issue of whether Mr. Freed's claim has sufficient merit to reach the discretionary factors, the Court finds that it does. While the Court ultimately concludes—as explained below—that Mr. Freed's "claim" for early release falls short, that is not to say that Mr. Freed's claim for early release is entirely

---

[1] The Sixth Amendment's right to counsel is not implicated here, as that constitutional right "only extends through a defendant's first appeal." *United States v. Filbey*, No. 2:13-CR-26, 2020 WL 3468181, at *1 (N.D. Ind. June 25, 2020) (citing *Coleman v. Thompson*, 501 U.S. 722, 756 (1991)). Mr. Freed has already appealed his criminal sentence. And rather than an appeal, his current motion under section 3582(c)(1)(A) is an ancillary matter that does not implicate the right to counsel. *Id.* (citations omitted).

meritless. Rather, Mr. Freed presents competent arguments in moving for early release. *See Heffley v. Steele*, No. 17-01624, 2019 WL 5092127, at *3 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (opining that this threshold-merits issue requires "the plaintiff [to] present some factual showing that demonstrates he has more than an extremely slim chance of success on the merits" (citing *Montgomery v. Pinchak*, 294 F.3d 492, 501 (3d Cir. 2002)) (cleaned up)). Because the Court finds that Mr. Freed has shown more than "an extremely slim chance of success" in his motion, the Court concludes that the threshold-merits issue has been met. As such, the Court turns now to the applicable discretionary factors.

Here, the most significant factor in determining whether to appoint counsel is Mr. Freed's ability to present his own case. *See Houser v. Folino*, 927 F.3d 693, 699 (3d Cir. 2019) (finding that this factor is "perhaps the most significant of *Tabron's* post-threshold factors" (cleaned up)). This is especially so due to the limited number of attorneys able and willing to be appointed as counsel. *See Evans*, 2020 WL 3574367, at *1 ("The court of appeals instructs that volunteer lawyer time is a valuable and scarce resource and therefore, district courts should not indiscriminately request counsel[.]" (citation omitted)); *In v. Stroup*, No. 19-00224, 2020 WL 5424043, at *1 (W.D. Pa. Sept. 10, 2020) (Lanzillo, J.) ("The Third Circuit has also recognized that there are significant practical restraints on the district court's ability to appoint counsel, including: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." (citation omitted) (cleaned up)).

Mr. Freed does an excellent job of presenting his case. His 21-page opening brief is succinct and shows a commanding grasp of the legal and factual aspects of his claim. Likewise, his 13-page reply brief ably responds to the government's opposition. (Indeed, as discussed below, the Court agrees with Mr. Freed's position concerning the applicability of certain Sentencing Commission policy statements, and rejects the government's arguments). Mr. Freed's arguments are easy to follow, relevant, and display

an impressive level of knowledge.  The Court thus finds that Mr. Freed is capable of presenting his own case.

Mr. Freed does not suggest otherwise.  Nor does his background suggest he is incapable of competent self-representation.    To the contrary, Mr. Freed is well educated, obtaining a bachelor's degree in civil engineering.  There is also no indication that Mr. Freed lacks the resources needed to ably present his case—rather, the data and citations presented in Mr. Freed's briefs show he has sufficient access to information to present his case.    Thus, the Court concludes that appointment of counsel is not necessary.  *Cf. Tabron*, 6 F.3d at 156 ("If it appears that an indigent plaintiff with a claim of arguable merit is *incapable* of presenting his or her case, serious consideration should be given to appointing counsel." (emphasis added)).

Further, the remaining discretionary factors are either inapplicable or weigh against appointing counsel. *See Houser*, 927 F.3d at 700 ("The District Court did not review any other *Tabron* factors before concluding that Houser should not receive new counsel . . . . It did not need to.  We have always emphasized that the *Tabron* factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress.  They are not exhaustive, nor are they each always essential.").  There are no discovery issues here—indeed, no discovery is necessary for Mr. Freed's motion. *Cf. id.* at 699 ("And when he asked for new counsel in this case, there was no further discovery to conduct. The concerns arising in other cases—a *pro se* litigant's susceptibility to discovery tactics, technical rulings hindering factual investigations, complex and incomprehensible discovery rules—were not in play here.").  Nor is there a need for expert testimony or credibility determinations.  And to the extent the legal issues relevant here are regarded as complex, Mr. Freed ably handles them.

For these reasons, the Court does not find that appointment of counsel is warranted.

## II.  Mr. Freed does not meet his burden of showing that early release under 18 U.S.C. § 3582(c)(1)(A) is justified.

Turning now to the substance of Mr. Freed's motion concerning early release, a court usually "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  But there are "a few narrow exceptions" to this general "rule of finality."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One is the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), which allows a court to "reduce" a term of imprisonment if it finds that (1) "extraordinary and compelling reasons" warrant reduction; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) consideration of the ordinary sentencing factors under 18 U.S.C. § 3553(a) favors reduction.

Until last year, only the Bureau of Prisons ("BOP") could file motions for compassionate release, and it "rarely did so." *United States v. Rodriguez*, — F. Supp. 3d —, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).  Indeed, "[f]rom 1984 to 2013, an average of only 24 inmates were released each year through BOP-filed motions.  *Id.* (citation omitted).  According to a report by the Department of Justice's Inspector General, these low numbers resulted from a combination of poor management, inconsistent implementation, a lack of clear standards, and the resultant "varied and inconsistent understandings of the circumstances that warrant consideration for compassionate release." *Id.* (citation omitted).

Unsatisfied with the compassionate-release program, Congress acted.  In late 2018, it passed the First Step Act—a "landmark piece of criminal-justice reform legislation that amended numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *Id.* (cleaned up); *see also United States v. Brooks*, No. 07-20047, 2020 WL 2509107, at *4 (C.D. Ill. May 15, 2020) ("The First Step was passed against the backdrop of a documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants.").  Of relevance here, section 603(b) of the First Step Act, which Congress titled "Increasing the Use and Transparency of Compassionate Release,"

amended section 3582(c)(1)(A) to allow prisoners to bring compassionate-release motions directly to court—so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first. *See* 18 U.S.C. § 3582(c)(1); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018).

With this legislative backdrop, the Court now addresses Mr. Freed's pending motion. For the following reasons, the Court finds that Mr. Freed's motion is properly before it but denies his request for release.

### A.   Mr. Freed has satisfied the 30-day "lapse" period to exhaust his administrative remedies.

Section 3582(c)(1)(A) permits a prisoner to bring a compassionate-release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In other words, the prisoner "must at least ask the [BOP] to [file a compassionate-release motion] on their behalf and give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

Here, the government does not dispute that Mr. Freed satisfied the statutory exhaustion requirements by requesting a reduction in sentence from the Warden of FCI Fort Dix more than 30 days ago. [ECF 85, p. 1, n.1]. The Court agrees that Mr. Freed has exhausted his administrative remedies.[2]

---

[2] Mr. Freed's request to the Warden was delivered on June 15, 2020, and the Warden denied the request four days later. [ECF 82, p. 4, Ex. A]. Mr. Freed then filed his instant motion on July 9, 2020. [ECF 82]. While Mr. Freed filed his motion less than 30 days after the Warden received his request for release, it has now been well over 30 days since the Warden received the request, and the

**B.    The Court may consider whether there are "extraordinary and compelling" reasons for release under the "catch-all" category of the Sentencing Commission's policy statement.**

Before addressing the merits of Mr. Freed's motion, the Court must first address an argument by the government that this Court—and others—have now rejected multiple times. The government appears to argue that in determining whether a sentence reduction is warranted under section 3582(c)(1)(A)'s "extraordinary and compelling reasons" clause, the Court is restrained in its analysis by the "policy statements issued by the Sentencing Commission" before the First Step Act's passage. Specifically, the government contends that the "applicable policy statement" is United States Sentencing Guideline Section 1B1.13. [ECF 85, pp. 8-11]. This policy statement "lists three specific examples of extraordinary and compelling reasons," none of which arguably apply to Mr. Freed, and also "a fourth catch-all provision" that, on its face, applies only if the "Director of the Bureau of Prisons" determines "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described." *Rodriguez*, 2020 WL 1627331, at *2 (cleaned up).

The government argues that "[c]ourts are not free to expand the list of extraordinary and compelling reasons" noted in the policy statements. [ECF 85, pp. 10-11]. Mr. Freed disagrees with the government, arguing that this Court may determine whether "extraordinary and compelling reasons" exist that justify Mr. Freed's immediate release, outside of the three enumerated factors

---

BOP has not filed any motion for compassionate release on Mr. Freed's behalf. Mr. Freed has thus satisfied his exhaustion requirement. *See United States v. Harris*, — F. 3d —, 2020 WL 5198870, at *1 (3d Cir. July 20, 2020) (concluding that the lapse of 30 days satisfies the exhaustion requirement even if the Warden previously denied the defendant's request); *see also Somerville*, 2020 WL 2781585, at *3; *United States v. Gray*, No. 13-11, 2020 WL 5350444, at *3 (W.D. Pa. Sept. 4, 2020) (Ranjan, J.).

listed at Sentencing Guideline Section 1B1.13. [ECF 86, pp. 1-6]. The Court agrees with Mr. Freed.

This Court recently noted its disagreement with the position the government takes here. *See United States v. Gray*, No. 2:13-cr-11, 2020 WL 5350444, at *4 (W.D. Pa. Sept. 4, 2020) (Ranjan, J.) (explaining that this Court rejected the government's "argument in *Somerville*, joining the 'growing consensus of courts across the country' that have reached the same conclusion" and explaining that the First Step Act renders the relied-upon policy statement's limitation of "catch-all" discretion to the BOP "defunct" and "no longer an 'applicable' policy statement" (citations omitted)). And as explained in *Gray*, this Court continues to believe that "the most natural way to synthesize what remains of the Sentencing Commission's old policy statement with the amendments made by the First Step Act is to say that the Court now 'assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.'" *Id.* (citation omitted). In other words, while the Commission's "catch-all" authorization for compassionate release remains an "applicable" policy statement, the limitation of that authority to the BOP Director is now defunct as "part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance." *United States v. Redd*, 444 F. Supp. 3d 717, 725 (E.D. Va. 2020).

Thus, the Court once again finds that it has the authority to assess whether "there exists in [Mr. Freed's] case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13(1)(D).

## C.  Mr. Freed has not shown "extraordinary and compelling reasons" to justify his release.

Turning to the crux of Mr. Freed's motion, the question is whether Mr. Freed has established "extraordinary and compelling" reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Freed "bears the burden of proof of extraordinary and compelling circumstances[.]" *Gray*, 2020 WL 5350444, at *5 (citations

omitted). But the Court is also mindful that he is proceeding *pro se* and will construe his filings liberally.

The proper analysis begins with the text of the statute, which does not "define—or place any limits on— what extraordinary and compelling reasons might warrant reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (cleaned up). The "catch-all" authority found in the Sentencing Commission's related policy statement, U.S.S.G. § 1B1.13(1)(D), is similarly open-ended about what constitutes an "extraordinary and compelling" reason. As a result, the Court gives the phrase its ordinary meaning. *See FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011).

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); *see also Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common."). The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); *see also Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met."). Thus, "at a minimum, [section] 3582(c)(1)(A)(i) requires a justification for release that is both ***unusual*** (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and ***significant*** (*i.e.*, serious enough to make release appropriate)." *Somerville*, 2020 WL 2781585, at *7 (emphasis in original).

In *Somerville*, this Court surveyed compassionate-release decisions related to COVID-19 from across the country, and inferred from those cases that, to establish an "extraordinary and compelling" reason in this context, a prisoner "must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *Id.* at *8. This test aligns with the Third Circuit's recent observation that the mere "existence of some health risk to every federal prisoner as the result of this global

pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 F. App'x 157, 161, n.16 (3d Cir. 2020); *see also Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Applying that standard here, Mr. Freed's motion falls short. To be sure, Mr. Freed suffers from a host of medical ailments. Mr. Freed asserts that he has hypertension, high cholesterol, and Celiac Disease. [ECF 82, pp. 2, 11-14]. He further notes that he previously had tumors on his thyroid surgically removed, and previously had Hodgkin's Disease, which required the removal of his spleen. *Id.* Mr. Freed also emphasizes that he is 52 years old. *Id.* The government does not contest Mr. Freed's description of his medical conditions and history. [ECF 85, p. 12]. And the government agrees that Mr. Freed "does have medical issues of significance." *Id.* However, even if his medical conditions are sufficiently serious, that is only part of the equation. Importantly, Mr. Freed fails to adequately show an actual, non-speculative, and non-generalized risk of exposure to COVID-19 at Fort Dix—which is ultimately fatal to his motion.

Mr. Freed does not claim that he has been directly exposed to the virus. Rather, throughout his briefs, Mr. Freed highlights general risks and statistical data related to COVID-19 cases throughout the country, both within and outside prison. *See, e.g.*, [ECF 82, pp. 11, 14, 20-21]; [ECF 86, p. 7]. What is lacking, however, is how Mr. Freed—specifically—is at a uniquely heightened risk of direct COVID-19 exposure. *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *Somerville*, 2020 WL 2781585, at *7-8. Mr. Freed's arguments describe only generalized risks that apply to every inmate at Fort Dix and elsewhere. *See, e.g.*, *Brooks*, 2020 WL 2509107, at *5 ("This Court has previously stated the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release.") (cleaned up).

Additionally, the Court cannot discern any heightened risk of exposure to COVID-19 at Fort Dix. In fact, there are currently zero cases of inmates or staff who have tested positive for COVID-19 at Fort Dix. *See https:// www.bop.gov/coronavirus/* (last visited September 17, 2020). And the preventative measures at Fort Dix appear to dispel any notion that Mr. Freed has a heightened, specific risk of exposure to the virus. *See, e.g.*, *United States v. Moses*, No. 14-232, 2020 WL 5117978, at *1 (E.D. Pa. Aug. 31, 2020) (highlighting the various procedures implemented at Fort Dix to limit exposure to COVID-19) (citation omitted); *United States v. Phillips*, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("The efforts made by the BOP at FCI Fort Dix have proven successful. . . . [C]onsidering the extensive measures implemented by the BOP to control the spread of COVID-19 and that those measures have allowed for low to zero transmission rates, the risk of [Defendant] contracting COVID-19 is very low."); *United States v. Hull*, No. 17-132, 2020 WL 2475639, at *3 (D. Conn. May 13, 2020).

Because Mr. Freed does not show more than a generalized and speculative risk of exposure to COVID-19, the Court concludes that he has not shown extraordinary and compelling reasons to justify early release.

### D.   Reducing Mr. Freed's sentence would conflict with the section 3553(a) considerations.

Even if Mr. Freed had shown "extraordinary and compelling reasons" for a sentence reduction, that is not the end of the discussion. The Court must also weigh those extraordinary reasons against the ordinary sentencing factors under 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Easter*, — F.3d —, 2020 WL 5525395, at *3, 7 (3d Cir. Sept. 15, 2020). If the section 3553(a) factors weigh strongly against release, that can overcome otherwise "extraordinary and compelling reasons." *See United States v. Jones*, No. 12-38, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (Ambrose, J.) ("[I]n considering the section 3553(a) factors, the Court should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether

compassible release would undermine the goals of the original sentence.") (cleaned up).[3]

Weighing the section 3553(a) factors here, the Court finds that a reduction in sentence is not appropriate.

The Court has considered the entire record in this case, including the pre-sentence report, the sentencing submissions, the sentencing transcript, and the materials submitted by the parties in connection with this motion. As the record shows, Mr. Freed's offenses are serious. [ECF 29]; [ECF 36]; [ECF 45]; [ECF 60].[4] Beginning in 2010, Mr. Freed began targeting multiple girls—who were minors at the time—seeking to obtain sexually explicit photos from them. Lying, cajoling, and threatening, Mr. Freed was able to extract explicit photos from multiple

---

[3] The section 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for (a) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See United States v. Jackson*, 390 F. App'x 130, 133, n.5 (3d Cir. 2010) (cleaned up).

[4] The following facts regarding the nature of the offenses are largely taken from the pre-sentence report and sentencing transcript. [ECF 29]; [ECF 60]. Additionally, the Third Circuit's opinion on Mr. Freed's direct appeal summarized many of the relevant facts in the record. [ECF 79-1, pp. 2-3].

victims. After obtaining these photos, he would then use the photos to extort more sexually explicit photos from the girls by threatening to distribute the photos to the girls' friends and family. With at least one victim, Mr. Freed carried out his threat, distributing the explicit photos to the girl's friends and family when she refused to send him more.

In communicating with the victims, Mr. Freed posed as his step-daughter, who was around 16 years old at the time. Mr. Freed created a fake Facebook account and several email addresses in his step-daughter's name. He also used a prepaid cellphone. Through these means of communication, Mr. Freed—posing as his step-daughter—demanded, cajoled, and threatened the minor victims in his pursuit to obtain sexually explicit photos from them. While not necessary to repeat in this opinion, his messages to the victims were often graphic and demeaning.

In addition to targeting a number of unrelated minors, Mr. Freed also targeted his step-daughter. Pretending to be a stranger, he extorted her for sexually explicit photos, while verbally and mentally abusing her. Mr. Freed's acts drove his step-daughter to the brink of suicide. Wanting the tormenting to stop, Mr. Freed's step-daughter told her tormentor (unbeknownst to her, her own step-father) that she was considering suicide. But this didn't matter. He didn't stop. Despite having lived in the same home for ten years, Mr. Freed continued to extort and taunt his step-daughter in his pursuit of explicit photos.

Mr. Freed's criminal activities continued for around a year until he was investigated and arrested by the authorities. At his arrest, the police found his cellphone, which contained around 700 sexually explicit photos, many of which were of the minor victims.

All told, the Court finds, taking a holistic view of all the section 3553(a) factors, a sentencing reduction here is inappropriate. Specifically, the nature and circumstances of the offenses, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes of Mr. Freed, all counsel against early

release.  These offenses are severe.  They caused undoubted trauma to the victims.  And that trauma is heightened as the victims were merely minors—individuals who now must live most of their life with those experiences.

Moreover, Mr. Freed committed his offenses through electronic means, sitting in his car and in his home.  Thus, while Mr. Freed emphasizes that his crimes were not physically violent, his crimes, unlike other crimes, can be executed without ever walking out the front door.

Further, Mr. Freed's sentence weighs against a reduction here.  Mr. Freed was sentenced to a 20-year term of imprisonment.  But the sentencing guidelines advised a sentence of life imprisonment.   And the mandatory minimum for Mr. Freed's offenses was 15-years imprisonment.   Thus, facing a guideline range of life imprisonment, Mr. Freed received a sentence only five years longer than the mandatory minimum.  Having now served approximately 8 years of his 20-year sentence, more than half of his sentence remains to be served.  The Court does not find that reducing his sentence by more than half is warranted; and if such a reduction were granted, it would create the kind of sentencing disparity that the law seeks to avoid.  *See, e.g.*, *United States v. Begin*, 696 F.3d 405, 412 (3d Cir. 2012) (stating that section "3553(a)(6) is designed to discourage" sentence "disparities within the federal system").[5]

---

[5] The Court does not mean to suggest that release is never appropriate when a defendant has substantial time remaining on his sentence or has already received a downward variance or departure relative to the guidelines. To the contrary, this Court has rejected such arguments. *See Somerville*, 2020 WL 2781585, at *12 ("[A]ll federal prisoners have committed serious crimes.  If generalized (albeit legitimate) concerns about the dangers of guns and drugs were enough to bar to compassionate release, almost no one would be eligible."); *id*. at *16 ("If the Court grants Mr. Somerville's motion, he may be treated more favorably than some 'similarly situated' prisoners.  On the other hand, if the Court denies Mr. Somerville's motion, he will just as likely be treated less favorably than many others.

Finally, the Court addresses Mr. Freed's specific arguments as they relate here. Mr. Freed acknowledges that his crimes are severe. But after acknowledging the serious nature of his acts, Mr. Freed unavailingly relies on a "it could have been worse" argument. He emphasizes that this isn't a case involving a child being sexually assaulted; nor a case involving filming and distributing the sexual assault; nor a case of forcing a child into sexual slavery. [ECF 86, pp. 10-13]. Rather, Mr. Freed asserts, this is a case about the victims merely "sexting." *Id.* But as it was when this argument was raised during Mr. Freed's initial sentencing, this argument remains unavailing. It is insufficient to argue that while his acts were bad, they could have been worse. So too could have been his sentence.

Accordingly, the Court concludes that reducing Mr. Freed's sentence is not warranted here under the applicable 3553(a) factors.

## **CONCLUSION**

For the reasons discussed above, Mr. Freed's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), and motion for appointment of counsel, is denied.

An appropriate order follows.

---

The principle of 'avoiding disparity' cuts both ways—not always in favor of a longer sentence.").

Here, however, it is the confluence of sentencing factors—substantial time remaining on a sentence below a guideline range of life imprisonment, a serious underlying crime with minors and a close family member as victims, and the absence of mitigating factors not reflected in the original sentence—that persuades the Court that the section 3553(a) factors weigh against release. A strong showing of "extraordinary and compelling" reasons could, in an appropriate case, overcome some of these concerns. But the at-best marginal showing Mr. Freed has made here could not overcome them all.

DATED this 18th day of September, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge